Filed 5/17/16  P. v. Polanco CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MARTIN POLANCO,<br><br>    Defendant and Appellant. | B256581<br><br>(Los Angeles County<br>Super. Ct. No. KA098378) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mike Camacho, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer, Alene M. Games and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

An amended information filed by the District Attorney of Los Angeles County charged appellant Juan Martin Polanco with committing continuous sexual abuse on a child between July 30, 2009, and September 28, 2011 (count 1; Pen. Code, § 288.5, subd. (a));[1] committing a lewd act on a child under 14 years old on September 29, 2011 (count 2; § 288, subd. (a)); and committing oral copulation/penetration with a child 10 years old or younger on September 29, 2011 (count 4; § 288.7, subd. (b)).[2]

Appellant was tried by a jury. The jury found appellant guilty on counts 1, 2 and 4 as charged. The trial court sentenced appellant to state prison for 12 years on count 1, 2 years on count 2, and 15 years to life on count 4. It ordered the sentences on counts 1 and 2 to run consecutive to the sentence on count 4, and to be served before the indeterminate sentence in count 4. Appellant received presentence custody credit for 224 days of actual custody, plus 33 days of conduct credits, for a total credit of 257 days.

On appeal, appellant argues: the CALCRIM No. 318 instruction impermissibly expanded the purpose for which the jury could consider fresh complaint evidence offered by the prosecutor; the prosecutor failed to adduce sufficient evidence to support count 4; the trial court should have instructed on attempted oral copulation as a lesser included crime; the trial court improperly vouched for the victim witness's credibility; CALCRIM No. 330 improperly supported the victim witness's credibility; and the trial court deprived appellant of his due process right to a fair trial as a result of cumulative error. We find no error and affirm.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Count 3 alleged that appellant committed oral copulation of a person under 14 years of age in violation of section 288a, subdivision (c)(1) on September 29, 2011. That count was dismissed because counts 3 and 4 overlapped, and the prosecutor elected to proceed on count 4. For purposes of trial, the trial court renumbered count 4 so that it would be referred to as count 3. For purposes of sentencing, the trial court once again referred to it as count 4.

## FACTS

### Pretrial Motion to Dismiss

When the prosecutor filed an amended information, defense counsel moved to dismiss counts 2, 3 and 4 based on section 288.5.[3] He argued that "the prosecution is precluded from charging my client with multiple counts when that conduct allegedly took place within the same period. Additionally, it will require the prosecution to charge [appellant] in the alternative."

The trial court concluded that the period of continuous conduct alleged in count 1 did not overlap with the September 29, 2011, conduct alleged in counts 2, 3 and 4. On that basis, the trial court denied the motion to dismiss.

To clarify, defense counsel stated that "[if] . . . the evidence is such that the conduct that took place overlapped, then at that point we will be able to make a motion to dismiss or the jury . . . will be instructed at the end that they will have to find my client guilty on the alternative or not guilty on all[.]"

---

[3] Section 288.5 provides: "(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

"(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.

"(c) No other act of substantial sexual conduct, as defined in subdivision (b) of Section 1203.066, with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim." (§ 288.5, subds. (a)-(c).)

3

The trial court replied, "Absolutely. We will talk about that at the appropriate time. But, again, you're reserving your right to readdress these issues at the end of the People's case, and I will certainly give you that opportunity. . . . [¶] Again, going off the People's charging document, they have charged in a way that would make that issue a nonissue, in other words, no overlap. But, nonetheless, if the evidence somehow goes contrary to the People's understanding and it makes this issue an issue, then we will certainly address it then."

**Prosecution Evidence**

*M.G. (mother)*

On direct examination, Mother testified that on September 29, 2011, she was living in a house with J.P. (father) and their two children, the victim, D.P. (minor) and his sister. At the time, minor was seven years old. Father's brother, appellant, was living in a small room in the back of the house.

The prosecutor asked: "On September 29, 2011, did you learn about something involving [appellant]?"

Mother replied: "Yes."

While mother was at church, father called her phone and requested that she come outside. She did. He gave her information that made her sad, and made her believe that he was sad. He told her to question the minor about "what was going on." Mother and minor went inside the family car, and she questioned him. He was crying and said he was embarrassed. He did not answer her questions. Father drove them home, and mother continued to question minor. Minor finally said that he and appellant touched either other's "wee-wee," which she understood to be a reference to their "private parts." He also said he put his mouth on appellant's private part, and something white came out.[4]

---

[4] The trial court overruled defense objections to mother testifying as to statements made by minor. In doing so, it relied on the fresh complaint doctrine set forth in *People v. Brown* (1994) 8 Cal.4th 746, 749–750 (*Brown*). During mother's testimony, the trial court stated: "I wanted to address the issue that [defense counsel] has brought to the [trial court's] attention with respect to some hearsay statements that have been permitted by the [trial court] to be introduced at this point through the testimony of [mother] regarding

About a week later, mother and father went to the police.

On cross-examination, the following colloquy transpired:

"[DEFENSE COUNSEL]: And isn't it true that the incident where [minor] told you about the first time coming from church was on September 2nd?

"[MOTHER]: I don't remember the date.

"[DEFENSE COUNSEL]: Perhaps it's September 8th because it's a Thursday and [appellant's] last day had been on the Friday?

"[MOTHER]: I don't remember the date.

"[DEFENSE COUNSEL]: Okay. So you don't remember for sure if, in fact, the incident took place on September 29th compared to some other day earlier in September 2011?

"[MOTHER]: Wherein my husband found—

"[DEFENSE COUNSEL]: Yes.

"[MOTHER]: I don't remember the date, but it was in September. [¶] . . . [¶]

"[DEFENSE COUNSEL]: So you learned about the incident sometime in September—

"[MOTHER]: Uh-huh.

"[DEFENSE COUNSEL]: —of the touching?

"[MOTHER]: Yes.

---

statements attributed to [minor]. There is basically two vehicles in which this type of evidence is permitted, one of which is what I think [defense counsel] referred to . . . under [Evidence Code section] 1360, which specifically is a statute created to address this type of information provided certain protocol is met and established before the introduction of the evidence. The other, which is, quite frankly, the reason I probably overruled certain hearsay objections [defense counsel] may have made or perhaps [will] continue to make [is because] . . . this type of evidence is more of a fresh complaint that I feel that has been established given the circumstances as to when this declaration was made to the witness, [mother], and the circumstances surrounding the reliability of that information for purposes of the jury's consideration, so it's not really—I did not intend to permit that introduction of evidence under [Evidence Code section] 1360. It's more of a judicial created exception of fresh complaint."

5

"[DEFENSE COUNSEL]:  Right.  And then two weeks later or so that's when you questioned your son again and that's when the allegation came out with regards to oral copulation?

"[MOTHER]:  I didn't question him.  He told me he had something to tell me.

"[DEFENSE COUNSEL]:  And that's when you had the discussion with your husband about what you had learned from your son.

"[MOTHER]:  Yes.

"[DEFENSE COUNSEL]:  But at that point it was not reported to the police; in fact, you waited another two or three weeks before you called the police, isn't that correct?

"[MOTHER]:  No.

"[DEFENSE COUNSEL]:  The same day that you called the police?

"[MOTHER]:  Probably the day after.

"[DEFENSE COUNSEL]:  Okay.  And the police came to your house?

"[MOTHER]:  No.  I went to the station.

"[DEFENSE COUNSEL]:  And you made the report?

"[MOTHER]:  Yes.

"[DEFENSE COUNSEL]:  And the police interviewed your son?

"[MOTHER]:  Yes."

On redirect, mother testified that she did not remember the exact date on which she talked to minor about what happened in appellant's room.  She said their conversation took place on a Thursday, a day she went to church.

The redirect examination proceeded as follows:

"[THE PROSECUTOR]:  You told [defense counsel] that you—regarding the conversation with your son about his disclosure to you about what happened between him and [appellant], that you didn't question him, but he told you he had something to tell you?

"[MOTHER]:  He did.

"[THE PROSECUTOR]:  Is that what he said to you, I have something to tell you?

6

"[MOTHER]: He told me—I don't remember if he told me I have something to tell you or he said I want to tell you something else. I don't remember.

"[THE PROSECUTOR]: Now, this was on a different day from when you had this conversation with your husband outside of the church; correct?

"[MOTHER]: Yes. [¶] . . . [¶]

"[THE PROSECUTOR]: And did he just—is that when he told you about the licking of the private part?

"[MOTHER]: No. I don't know how to explain it. He wanted to tell me something. . . but he couldn't say it until I told him you have to tell me.

"[THE PROSECUTOR]: Okay. And then what happened?

"[MOTHER]: Then he told me that he licked his private part."

*Father*

After father took the witness stand, the prosecutor said she wanted to talk to him about September 29, 2011. He preemptively said he did not remember anything because it had "been such a long time."

The prosecutor asked: "Back in September when your son was approximately seven years old, was there a date where you were looking for him and you found him inside that room with [appellant]?" Father said yes.

Moments later, father began accusing the prosecutor and trial court of not letting him talk. Father said, "I just better leave[.]" The trial court sent the jury to the jury room and admonished father that he had been subpoenaed as a witness and testifying was not optional. Father remained belligerent until the trial court repeated a threat to incarcerate father for the duration of the trial if he did not cooperate. Father agreed to testify.

The prosecutor asked if father went to the police station with mother and minor to make a report. Father indicated that he did, but only because mother said that he was "forced" to go. He thought that if he did not go, he could end up in jail. The prosecutor asked: "So[,] you didn't want to go to the police; correct?" Father answered in the affirmative.

7

According to father, he yelled for minor outside the "storage room" where appellant stayed. There was no response. Father knocked on the door. Because it was not level and could not close all the way, it opened on its own. He "didn't see anything[.]" He asked minor "what he was doing there" and he walked out. Mother showed up a few seconds later and invited appellant to church. Appellant said he was tired.

The only reason father asked minor what he was doing in appellant's room was because father had stored three shotguns "back there." Minor never told father what he was doing in the room.

On cross-examination, defense counsel asked if father and his family went to the police department on October 17, 2011. He said yes.

Father admitted that in 2008 or 2009, he had pornography on his phone. Further, he admitted that while he lived with his in-laws in 2009, he was questioned about a bill on the family's account for pornography.

*Officer Rene Flores*

On October 17, 2011, mother, father, minor and his sister went to the police Department and gave statements to El Monte Police Officer Rene Flores.

Minor said "white stuff" came out of appellant's "wee wee" and that "the touching" began when he was three.

Father appeared upset and bothered. He said he was looking for his son and noticed that appellant's bedroom door was locked. Father knocked. Approximately 10 seconds later, appellant opened the door and father notice minor inside. Appellant and minor appeared to be nervous. Father questioned minor about what "they" were doing and minor refused to answer. Instead, he cried. At some later date, mother spoke to father and said minor had disclosed an incident during which appellant performed oral sex on minor.

*Deborah Davies*

Deborah Davies (Davies) worked as a licensed clinical social worker who conducted forensic interviews for the Children's Advocacy Center in Pomona. On

8

February 29, 2012, she interviewed minor. The interview was video recorded and burned to a DVD.

*The DVD of Minor's Interview*

The DVD of minor's interview was played for the jury.

Minor told Davies that appellant kissed him on the lips and his "private part." Also, minor "licked" appellant's private part, at which point some "white thing" came out. It went on the floor and in his mouth. Minor said he "spit it out" and that "[i]t was nasty." Next, he said appellant touched his private part "in the back" he uses "[t]o go to the restroom." It felt like the touching was on the "inside." Davies asked if the kissing had happened on more than one occasion. Minor said it started when he was three.[5] She asked whether minor licked appellant's private part one time or more than one time. Minor stated, "More, more, more, more, more, more."

Davies asked "what room would you be in?" Minor said "all the stuff" happened "in the back where we put all the stuff." He went "back there" because appellant would say, "Come, [minor]." Appellant kept his clothes on; his private part stuck out through his zipper.

Minor licked other parts of appellant. While minor was doing that, appellant would watch "nasty stuff" on the television. The nasty stuff involved a girl and boy who kissed and wore no clothes.

Appellant told minor not to tell mother, father or sister. He said he would hit minor if he told.

*Minor*

At the time of trial, minor was in fourth grade. He testified that when he lived in the same house as appellant, appellant had his own room. Minor went there more than once, and they did "[a] lot of stuff."

---

[5]    In the interview, minor indicated that some type of act involving appellant's private part also started when minor was three. The record is not clear as to the nature of that act, and we decline to speculate.

9

The prosecutor asked if minor remembered a day when father came looking for him. Minor said he did, and that father found minor in appellant's room. When asked if appellant ever did anything minor did not like, minor said "[y]es," and that they touched each other's bodies.

He remembered telling mother that "white stuff" came out of appellant's "wee wee," and telling Davies that he licked appellant's "wee wee." The licking happened on more than one occasion.

The prosecutor played the DVD of minor's interview in his presence. That helped him remember certain things. Minor said he told the truth, and that those "things" happened on different days.

On cross-examination, minor was asked about the day father went looking for him. After minor watched father work on a car, he went to appellant's room. About 10 minutes later, minor heard father calling for him. Defense counsel asked: "But at the time your [father] . . . called your name in those ten minutes, [appellant] wasn't touching you; isn't that correct?" Minor said, "He was touching me." He was asked if he remembered white stuff coming out. He said yes. Defense counsel said, "It did come out?" Minor replied, "Not that day." Though minor remembered that appellant was touching him that day, minor did not remember where. It was "bad touching." The trial court asked, "If someone were to touch you in a way that you thought was bad, what part of your body would be touched[?]" Minor said, "Private part." On that day, minor touched appellant. That was "bad touching" as well.

**Defense Evidence**

*Bradley McAuliff*

The defense called Bradley McAuliff (McAuliff) as an expert in the areas of child suggestability and forensic interviewing. He explained that outside factors, such as questions imbued with assumptions, can influence the accuracy of a person's memory, especially if the person is young. He was concerned that minor's memory might have been affected because mother or others might have asked minor leading questions. Also,

McAuliff was concerned that Davies's use of diagrams might have led to false allegations from minor.

*Appellant*

Appellant testified that on Thursday, September 1, 2011, mother sent him a text telling him to leave the house. She did not give a reason. When he saw her later, she confronted him with the allegation that he touched minor. Appellant told her "she was crazy[.]" Defense counsel asked appellant if he touched minor while staying at mother and father's house, or at any time prior, and appellant said no. He denied ever ejaculating in front of minor.

*Other Defense Witnesses*

Appellant's brother, M.P., testified that on one occasion when minor's family was visiting his grandparents, M.P. saw minor watching pornography on father's phone. It depicted a man masturbating and ejaculating into the mouth of a woman.

Father's niece, J.N., visited father for extended periods of time when he lived with mother's parents in 2009. On one particular day, J.N. heard minor and mother's brother telling each other the other had a small "weenie." At the same time, and in the same room, J.N. saw a naked girl and naked guy having sex on the television.

**Rebuttal Evidence**

Detective Eric Johnston, an officer with the El Monte Police Department, interviewed appellant after his arrest. Appellant said he was not comfortable talking about the case. When asked if he was ever alone with minor, appellant said no. Detective Johnston queried whether father ever found minor in a room alone with appellant. Appellant said something similar to "not really." After being asked if he ever touched minor, appellant said, "There is nothing at all, just what she thinks."

11

**DISCUSSION**

**I. The Challenge to CALCRIM No. 318 Was Forfeited.**

Appellant contends that the trial court should not have given CALCRIM No. 318 because the fresh complaint evidence of minor's out-of-court statements was introduced for a limited purpose. In appellant's view, the instruction impermissibly expanded the purpose for which the jurors could use the evidence. Alternatively, if we conclude that the objection was forfeited due to the lack of an objection or request for a limiting instruction, appellant contends he received ineffective assistance of counsel. We conclude that the objection was forfeited, and that appellant was not prejudiced by defense counsel's decision not to object.

A. <u>The Fresh Complaint Doctrine</u>.

The fresh complaint doctrine was set forth in *Brown*. (*People v. Loy* (2011) 52 Cal.4th 46, 65.) In *Brown*, our Supreme Court explained that "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*Brown*, *supra*, 8 Cal.4th at pp. 749–750.)

B. <u>CALCRIM No. 318</u>.

Pursuant to CALCRIM No. 318, the trial court instructed the jury: "You have heard evidence of statements that a witness made before this trial. If you decide that the witness made those statements, you may consider those statements in two ways. [¶] 1. To evaluate whether the witness's testimony in court is believable. [¶] 2. As evidence that the information in those earlier statements is true."

C. <u>Forfeiture</u>.

To preserve a challenge to a jury instruction, a defendant must object at trial. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.) A trial court has no duty to limit the use of fresh complaint evidence unless the defense requests a limiting instruction. (*Brown*,

12

*supra*, 8 Cal.4th at p. 757 ["Because of the limited purpose for which the out-of-court statements of victims may be admitted as fresh complaints, past cases have held that the trial court upon request must instruct the jury to consider such evidence only for the purpose of establishing that a complaint was made, so as to dispel any erroneous inference that the victim was silent, but not as proof of the truth of the content of the victim's statement"].)  Here, because defense counsel did not request a limiting instruction regarding the use of the fresh complaint evidence of minor's out-of-court statements, and because he did not object to CALCRIM No. 318, appellant forfeited his challenges, at least insofar as it did not impact his substantial rights.  (*People v. Manning* (2008) 165 Cal.App.4th 870, 880; *People v. Daya* (1994) 29 Cal.App.4th 697, 714 [a "defendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions"]; *People v. Cleveland* (2004) 32 Cal.4th 704, 749; § 1259.)

Appellant contends that the trial court's use of CALCRIM No. 318 is reviewable because it impacted his substantial rights.  As applied here, he contends that it violated his right to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

In our view, the instruction rested on sound constitutional footing.  The instruction allowed the jury to use minor's out-of-court statements for the truth of the matter asserted, which was permissible.

More than four decades ago, the United States Supreme Court held that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (*California v. Green* (1970) 399 U.S. 149, 158.)  Our own Supreme Court instructs that prior consistent and inconsistent statements can be admitted as substantive evidence as long as the declarant testifies at trial.  (*People v. Cannady* (1972) 8 Cal.3d 379, 385; *People v. Fierro* (1991) 1 Cal.4th 173, 222.)

When minor testified that he and appellant touched each other on the day that father found him in appellant's room, that touching either did or did not involve mouth to

genital contact.[6] If he was indicating the former, it was a prior consistent statement. If he was indicating the latter, then it was a prior inconsistent statement. Either way, because he testified, his out-of-court statements were admissible.

In light of the admissibility of the evidence, we conclude that any error did not impact appellant's substantial rights.[7]

D. The Ineffective Assistance of Counsel Argument.

To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that defendant was prejudiced, i.e., there was a reasonable probability of a better result with adequate representation. (*People v. Williams* (2013) 56 Cal.4th 630, 690.) Here, even if defense counsel should have requested a limiting instruction regarding the fresh complaint evidence, or if he should have objected to CALCRIM No. 318, we perceive no prejudice. Because minor testified, the prosecutor could have sought to have the out-of-court statements admitted as prior consistent or inconsistent statements. Consequently, there is no probability that appellant would have obtained a better result had a limiting instruction been requested, or if the trial court had chosen not to instruct the jury pursuant to CALCRIM No. 318.

## II. Evidence Sufficient as to Count 4.

Appellant contends the conviction on count 4 must be reversed because the prosecutor failed to adduce sufficient evidence of mouth to sexual organ contact on

---

[6]     "The elements of oral copulation with a child 10 years of age or younger [citation] are (1) The defendant engaged in an act of oral copulation with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old. [Citation.] Oral copulation is defined as any contact, no matter how slight, between the mouth of one person and the sexual organ of another. Penetration is not required. [Citation.]" (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79–80 (*Mendoza*).)

[7]     We recognize that minor should have testified first, and only then should mother have been allowed to testify as to the content of minor's out-of-court statements as either consistent or inconsistent. But, for constitutional purposes, the timing of mother's testimony did not adversely impact appellant's rights.

September 29, 2011.  This contention lacks merit because minor's out-of-court statements supported the jury's finding of guilt.

    A.  <u>Standard of Review</u>.

"In considering a challenge to the sufficiency of the evidence to support [a judgment], we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

    B.  <u>Analysis</u>.

Appellant argues that "the only specific testimony about what occurred and what did not occur inside [appellant's room] on the day [minor] was found with appellant was elicited from [minor] on cross-examination.  [Minor] testified that he and appellant touched each other and it was 'bad touching.'  [Citation.]  To [minor], a 'bad touching' would be touching a 'private part.'  [Citation.]  [Minor] agreed that 'nothing else happened.'  [Citation.]  In addition, [minor] specifically recalled that 'the white stuff,' did not come out that day, but did 'before.'" (Underlying omitted.)  Appellant acknowledges that the evidence showed that minor told mother about mouth to genital contact but contends that this occurred two weeks after father found minor in appellant's room.  Next, appellant avers that mother "never testified, nor told police[,] that the oral copulation happened on the day [minor] was found in appellant's room[.]"

This argument does not persuade us.

Mother testified that she learned about "something" involving appellant on September 29, 2011.  After speaking to father, she spoke to minor, first in the car and

15

then at home.  While at home, minor indicated that he and appellant touched each other's private parts.

At that point in the trial, the trial court took a lunch break.  When the parties reconvened, mother returned to the witness stand and the following exchange occurred between her and the prosecutor:

"[THE PROSECUTOR]:  [Mother], you were telling us . . . the moment where you got back to the house and you had a further conversation with your son about what happened between him and [appellant] in the room; correct?

"[MOTHER]:  Yes.

"[THE PROSECUTOR]:  And at that time, what did he tell you?

"[MOTHER]:  Um, that they were touching each other's private parts.

"[THE PROSECUTOR]:  And did he say that anything else happened other than touching each other's private parts?

"[MOTHER]:  Yes.  Oral sex.

"[THE PROSECUTOR]:  Oral sex?

"[MOTHER]:  Yes.

"[THE PROSECUTOR]:  Tell us.  Were those your son's words[,] oral sex?

"[MOTHER]:  No.  He told me he put his mouth on [appellant's] private part."

At a subsequent point during mother's testimony, the trial court sought clarification.  It asked mother how minor described the act.  She stated:  "He told me that he put his mouth on the private part and I asked him what else happened.  He said that something white came out."

Mother's testimony permitted the jury to find beyond a reasonable doubt that appellant committed the crime alleged in count 4.

We acknowledge that mother either confused or contradicted her story on cross-examination and redirect examination by saying she did not remember the date father found minor in appellant's room, and by stating that on a different day than the day father found minor in appellant's room that minor told her about licking appellant's private part.  But this does not change our conclusion.  A jury has the power to resolve contradictions

16

and inconsistencies in a witness's testimony, and it may accept one of two incompatible stories as true. If supported by substantial evidence, we must give due deference to a jury's finding. (*People v. Scaggs* (1957) 153 Cal.App.2d 339, 353; *People v. Mooney* (1918) 177 Cal. 642, 650; see *People v. Manibusan* (2013) 58 Cal.4th 40, 101; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

We also acknowledge that minor testified that appellant did not ejaculate on the day father found him in appellant's room. But it is of no moment. The jury could have determined that oral copulation occurred on September 29, 2011, without appellant ejaculating. Or, the jury could have chosen to believe minor's September 29, 2011, hearsay statement to mother indicating that he put his mouth on appellant's private part on that date and white stuff came out.

## III. No Sua Sponte Duty to Instruct on Attempted Oral Copulation.

Appellant argues that the trial court violated his right to a fair trial when it failed to give a sua sponte instruction on attempted oral copulation. In our view, the evidence did not support an attempted oral copulation instruction.

### A. Standard of Review.

An appellate court independently reviews whether a trial court erred by failing to instruct on a lesser included offense (*People v. Licas* (2007) 41 Cal.4th 362, 366), and whether the error, if any, resulted in a constitutional violation (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433).

### B. Constitutional and State Law Principles.

The United States Constitution "'guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through several provisions of the Sixth Amendment[.]'" (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 146.) For example, a defendant has a right to a trial in front of an impartial jury, and a right to confront witnesses. (U.S. Const., 6th Amend.) Broadly speaking, state courts have an obligation under the Due Process Clause of the Fourteenth Amendment "to ensure 'that "justice shall be done"' in all criminal prosecutions. [Citation.]" (*Cone v. Bell* (2009) 556 U.S. 449, 451.) In this way, defendants are protected "against

17

fundamentally unfair treatment by the government in criminal proceedings. [Citation.]" (*Doggett v. United States* (1992) 505 U.S. 647, 666 (dis. opn. of O'Connor, J.).)

"'[A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence [and] . . . an erroneous failure to instruct on a lesser included offense constitutes a denial of that right . . . .' [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 645.)

"'[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citations.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

"[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case. [Citation.]" (*People v. Carter* (2003) 30 Cal.4th 1166, 1219.) "'[It] must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.' [Citation.] Conversely, even on request, [the] trial [court] has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction. [Citation.] '"Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." [Citation.]' [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)

C. <u>Analysis</u>.

Appellant argues that the prosecutor failed to adduce evidence of oral copulation on the day father found minor in appellant's room. Further, appellant argues that because minor's description of events indicated that oral copulation had occurred on many prior occasions, the jury could have concluded that oral copulation was about to happen before father interrupted appellant and minor. Based on these two points, appellant would have

us apply the elements test and conclude that the trial court should have instructed the jury on attempted oral copulation as a lesser included offense.

This argument lacks merit.

In *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*), our Supreme Court held that attempted escape from prison is not a lesser included offense of escape from prison because the former requires specific intent to commit the crime and the latter does not. (*Id*. at pp. 749–750.) It explained that "the general principle that attempt is a lesser included offense of any completed crime[] . . . is not applicable . . . where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*Id*. at p. 753.) As summarized in *People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1248 (*Braslaw*), "*Bailey* thus highlights a nonintuitive aspect of the relationship between attempts and completed crimes: while it might seem an attempt would naturally be a lesser included offense, this is not necessarily so. Attempts are only lesser included offenses if the sole distinction between the attempt and the completed offense is completion of the act constituting the crime. [Citation.] If the attempt requires a heightened mental state, as is the case with attempts of many general intent crimes, the attempt requires proof of an additional element and is therefore not a lesser included offense. [Citations.]"

Applying *Bailey*, the court in *Mendoza, supra,* 240 Cal.App.4th at p. 83 (*Mendoza*) held that "[a]ttempted sexual intercourse, attempted sodomy and attempted oral copulation with a child 10 years of age or younger are all specific intent crimes. [Citation.] Thus, under the elements test, they are not lesser included offenses of the charged general intent crimes," i.e.*,* sexual intercourse or sodomy with a child 10 years of age or younger, oral copulation with a child 10 years of age or younger, and lewd act upon a child. (*Id*. at pp. 75, 83.)[8]

---

[8]    While the defendant was charged with oral copulation or sexual penetration with a child 10 years of age or younger, the defendant claimed only that the trial court should have given a lesser included offense instruction with respect to attempted oral copulation with a child 10 years of age or younger. (*Mendoza*, *supra*, 240 Cal.App.4th at pp. 75–

Appellant contends that the *Mendoza* court misapplied *Bailey* and should not be followed. In his estimation, the only distinction between the charged offense under section 288.7, subdivision (b) and an attempt is the completion of the crime, and therefore an attempt would be a lesser included offense under the reasoning of *Bailey* and *Braslaw*. This argument falters. A violation of section 288.7, subdivision (b) requires a person 18 years of age or older who engages in oral copulation or sexual penetration with a child who is 10 years of age or younger. An attempted violation of section 288.7, subdivision (b) occurs when a person 18 years of age of older specifically intends to orally copulate a child who is 10 years of age or younger and commits a direct but ineffectual act toward its commission. (§§ 21, subd. (a), 664.)[9] There is a distinction because an attempt requires specific intent, and therefore completion of the act is not the only fact that separates the offenses.

Regardless, even if attempted oral copulation with a child 10 years of age or younger was a lesser included offense, it would not benefit appellant. While the record contains substantial evidence of oral copulation, it does not contain substantial evidence of attempted oral copulation, i.e., there is no evidence of a direct but ineffectual act toward the commission of the crime. Thus, regardless of whether we follow *Mendoza*, the trial court did not transgress a sua sponte duty.

## IV. The Vouching Challenge Was Forfeited.

Appellant argues that the trial court improperly vouched for the minor's veracity via the comments it made to the jury and minor before and during his testimony. If his

---

76.) The *Mendoza* court noted that in *People v. Ngo* (2014) 225 Cal.App.4th 126, 157, the court held that because sexual penetration of a child 10 years of age or younger is a specific intent crime requiring that the act be done for the purpose of sexual arousal, gratification or abuse, attempted sexual penetration of a child 10 years of age or younger is a lesser included offense.

[9] Appellant suggests a defendant is guilty of an attempt if he or she attempts oral copulation regardless of his or her knowledge of the minor's age. His position fails due to a lack of supporting authority. In any event, the issue is moot. Whether or not a defendant must know a child's age with respect to an attempt, a defendant still must specifically intend to commit oral copulation.

20

challenge was forfeited, he contends he was prejudiced by ineffective assistance of counsel. The record establishes that appellant forfeited his challenge, and he was not prejudiced by defense counsel's performance.

A. Relevant Proceedings.

Prior to minor's testimony, the trial court prefaced it by stating: "Now, ladies and gentlemen, [minor] is the minor witness in this case. We previously referred to him in the record as John Doe. But the first name has been disclosed in the record so we'll refer to the witness by his true first name only and maintain for privacy reasons the last name as confidential. [¶] [Minor] is entitled, as any witness, in this type of case who is an alleged victim entitled to have a support person to sit alongside him or her in order to make the witness, especially a child, feel a little more comfortable in talking in a roomful of strangers. And [minor] has chosen his sister. His sister is here. She's sitting alongside [minor] near the witness stand as I speak. But [his] sister is a support person only. She is not a witness. She's not allowed to say anything or assist the witness in offering any testimony. She's already been instructed by the court just to be there but remain silent and she acknowledges that she will do that."

Next, the trial court conversed with minor. That conversation transpired thusly:

"[THE COURT]: Now, [minor], we're going to ask you some questions because we need to hear your story. But before we can ask you any questions, I need to make certain that you know how to tell the truth. You need to know the difference between a truth and a lie because the only thing that I'm permitted to allow any witness like you to say is the absolute truth. You cannot lie. You cannot make up stories. You cannot say anything other than the truth. Do you understand this?

"[THE WITNESS]: Yes.

"[THE COURT]: Okay. I know you do [minor]. [Minor], just tell me how old are you today?

"[THE WITNESS]: Nine.

"[THE COURT]: You're nine years old. Okay, [minor], now I'm going to put you to the test to see if you really know how to tell the truth. [¶] If I were to tell

21

everyone in this courtroom that I'm wearing a red robe would that be the truth or would it be a lie?

"[THE WITNESS]: A lie.

"[THE COURT]: It would be a lie because my robe is black in color; is that right?

"[THE WITNESS]: Yes.

"[THE COURT]: So I'm confident that you know how to tell the truth and you certainly know what a lie is. Lies are bad thing[s] to do. You cannot lie to anyone in this courtroom, specifically these good people that are sitting in this jury box. They need to hear your story. They need to hear the truth. You have to tell us the truth. Do you promise that you'll do that for us?

"[THE WITNESS]: Yes.

"[THE COURT]: Okay. No matter how difficult it may be, you need to tell us the truth."

Immediately, the trial court stated: "Minor has been examined by the court and he qualifies as a witness to offer testimony. We need not swear in [minor] as a formal witness since he has been qualified to testify."

Minor went on to testify.

When minor's testimony resumed after a lunch break, the trial court advised minor in open court as follows:

"[THE COURT]: [Minor], I need to remind you that you remain a witness which means that you still have to tell us the truth no matter how difficult that may be for you.

"[THE WITNESS]: Yes.

"[THE COURT]: Do you understand that?

"[THE WITNESS]: Yes.

"[THE COURT]: I know you can do that. All right."

After an afternoon break, the following colloquy transpired:

"[THE COURT]: We're in the presence once again of all sworn jurors including alternates to resume trial and the examination of witnesses on behalf of the people. [¶] Witness [minor] has returned to the witness stand alongside his support person his sister.

22

[¶] Minor, you're still required to tell us the truth. You're almost done. You will be finished today so don't worry about being here any longer than today. Do you acknowledge that you still need to tell us the truth?

"[THE WITNESS]: Yes.

"[THE COURT]: I know you do."

B. Considerations Related To A Child Witness's Qualification To Testify.

There is no distinction between a child witness and any other witness. (*People v. Thomas* (1978) 20 Cal.3d 457, 471.) "A witness is presumed competent absent a showing to the contrary. [Citation.]" (*People v. Willard* (1983) 155 Cal.App.3d 237, 239.) That presumption can be rebutted. A person is disqualified to be a witness if he or she is either (1) "[i]ncapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him," or (2) "[i]ncapable of understanding the duty of a witness to tell the truth." (Evid. Code, § 701, subd. (a).)

"Questions in competency examinations should not range widely across areas that do not bear directly on competency as defined by [Evidence Code section 701] but should focus on the witness's ability to express himself or herself [citation] and his or her understanding of the duty to tell the truth [citation]. To ascertain the former, the judge should have a conversation with the child using short, simple sentences to determine if the child's speech is intelligible and if the child appears to understand simple questions. . . . To ascertain children's understanding of their duty to tell the truth, the judge should assess children's understanding of what it means to them to lie and tell the truth and the consequences of promising to tell the truth." (Couzens & Bigelow, Sex Crimes: Cal. Law & Procedure (The Rutter Group 2015) § 8.3, p. 8-63.)

C. Due Process and Judicial Misconduct Law.

A defendant "has a due process right to an impartial trial judge under the state and federal Constitutions. [Citations.] The due process clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of the case. [Citation.]" (*People v. Guerra* (2006)

23

37 Cal.4th 1067, 1111.) "A trial [court] may not vouch for the credibility of a witness." (*People v. Banks* (2014) 59 Cal.4th 1113, 1206, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391.)

"[J]udicial misconduct claims are not preserved for appellate review if no objections were made on those grounds at trial. [Citations.] However, a defendant's failure to object does not preclude review 'when an objection and an admonition could not cure the prejudice caused by' such misconduct, or when objecting would be futile. [Citations.]" (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237.)

D. Forfeiture.

The People argue that appellant forfeited his challenge to judicial misconduct because he did not object below. In counterpoint, appellant contends that he did not forfeit his challenge because objecting would have been futile, and that an admonition would not have cured the alleged prejudice.

Even if the trial court's comments amounted to misconduct (which we are not concluding), there is no indication in the record that the trial court would have refused to qualify minor outside the presence of the jury or otherwise ensure that it did not in any way vouch for minor's veracity. We reach this conclusion because the trial court did not express any hostility toward defendant or defense counsel, nor did it otherwise indicate a refusal to consider defense counsel's objections relative to other matters. Indeed, the trial court treated defense counsel with the utmost respect.

Our no futility conclusion remains solidly moored even when, as urged by defendant, we consider the facts and holding in *People v. Hefner* (1981) 127 Cal.App.3d 88 (*Hefner*). In that case, the defendant was charged with and convicted of various sex offenses against multiple children. On appeal, inter alia, he argued that he was prejudiced by the trial court's misconduct. As explained by the *Hefner* court, "The record here is replete with blunt, caustic and cynical remarks by the trial judge smacking of proprosecution bias. Those made in the presence of the jury unmistakably denigrated the credibility of defense counsel, his client, his witnesses and his case." (*Id*. at p. 92) For example, the trial court made remarks implying that defense counsel was trying to

trick the jury; accused defense counsel of misstating the evidence to circumvent the trial court's evidentiary rulings; made various remarks that conveyed the trial court's apparent impression that defense counsel was being unfair to the witnesses when he read testimony from a prior trial, but then suggested that the prosecutor, or even his investigator, could be relied on to be fair; and made remarks suggesting that the jury should not concern itself with contradictions or lack of specifics in the testimony of minor witnesses. (*Id.* at pp. 93–95.) While the court noted that "[j]udicial statements tending to show bias do not require reversal for a conviction based on overwhelming evidence of guilt," it concluded that the evidence against the defendant, while substantial, was not overwhelming due to testimonial contradictions and dubious statements made by some of the witnesses. (*Id.* at p. 95.) As a result, the court concluded that the possibility of prejudice was too strong to be ignored. (*Ibid.*) Based on judicial misconduct and other factors, the judgment was reversed. (*Id.* at pp. 95–97.)

There is no comparison between the even tempered, neutral conduct of the trial court here and the biased conduct of the trial court in *Hefner*. The trial court in this case in no way denigrated defense counsel, his client or witnesses. Nor did the trial court suggest that the prosecutor or minor were more reliable than defense counsel, his client or his witnesses. All the trial court did was qualify minor as a witness and remind minor after breaks that he had an obligation to tell the truth.

Moreover, even if the trial court's comments amounted to improper vouching (which we are not concluding), the trial court could have effectively admonished the jury that it was the sole factfinder, and that it should disregard any comment by the trial court implying that minor was credible.

On this topic, we again find *Hefner* distinguishable.

The *Hefner* court concluded that it was "unlikely that the cumulative prejudicial effect of the judge's remarks interspersed throughout the trial, indicating the prosecutor and his witnesses were more trustworthy than Hefner's, could have been negated merely by judicial admonitions to the jury." (*Hefner, supra*, 127 Cal.App.3d at p. 95.) This was all the more true, the court added, given that the case involved allegations of child

25

molestation. It noted that, per our Supreme Court: "'As frequently has been said regarding cases of the instant character, "No charge can be more easily made, and none more difficult to disprove." . . . Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved.' [Citations.]" (*Id*. at p. 96.)

This case did not involve improper judicial commentary interspersed throughout the case. It involved the qualification of minor as a witness, and a few comments and questions designed to remind minor of his obligation to tell the truth. Any potential prejudice could have been overcome with an admonition informing the jury that the trial court made a competency finding, not a credibility finding, and that the jury was the sole arbiter of credibility.

E. The Ineffective Assistance of Counsel Claim.

Even if defense counsel fell below a reasonable standard by failing to object to the trial court's examination of minor in front of the jury, and to the trial court's various comments, appellant did not suffer prejudice.

Appellant complains about the following comments by the trial court: "[T]he only thing that I'm permitted to allow any witness like you to say is the absolute truth;" "We need not swear in [minor] as a formal witness since he has been qualified to testify;" and "[Minor] has been examined by the court and he qualifies as a witness to offer testimony." Appellant faults the trial court for these additional comments: after a lunch break, the trial court reminded minor of his duty to tell the truth and added, "no matter how difficult that may be for you;" after minor agreed he understood he had to tell the truth, the trial court said, "I know you can do that;" after another break, the trial court stated to minor, "You're almost done" and "You will be finished today so don't worry about being here any longer than today," then stated "I know you do" after minor again acknowledged he needed to tell the truth.

26

We are urged by appellant to conclude that these comments suggested that the trial court was duty bound to prevent lying in the courtroom, which absolved the jury of its duty to independently assess minor's credibility; and the comments implied that the trial court was vouching for minor's credibility and testimony. Appellant also suggests that the trial court improperly displayed sympathy for minor.

The first question is whether there was a reasonable likelihood that a jury might infer from the trial court's comments that it had vouched for minor's credibility and invited it to give that testimony special credence. (*People v. Coddington* (2000) 23 Cal.4th 529, 616 [overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069].) There was no such reasonable likelihood here. The trial court merely qualified minor to testify and then encouraged him to tell the truth. Because of minor's age, and the nature of the case, the jury would have understood the reason why the trial court engaged in such a colloquy with minor. It would not have inferred that minor's testimony was more likely to be truthful.

The second question is whether there was a reasonable likelihood the jury perceived that the trial court was expressing sympathy for minor, and was thereby expressing an interest in the outcome of the trial. Once again, we find no reasonable likelihood. The record establishes that the trial court did no more than manage minor as a witness by qualifying him, making sure he understood his obligation to the truth, and trying to protect him from undue anxiety.

Regardless, it is not reasonably probable that appellant would have obtained a different result in the absence of the trial court's comments. The implied vouching, lessening of the jury's duty and judicial sympathy, if any, that could have been inferred by the jury was indirect and limited at best, and it was countermanded by the jury instructions. For example, the trial court instructed: "Now, you alone must . . . judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards setting aside any bias or prejudice you may have. You may believe all, part, or none of a witness's testimony. Consider the testimony of each

27

witness and simply decide how much of it you believe. In evaluating witnesses' testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." Later, the trial court told the jury: "Do not let bias, sympathy, prejudice or public opinion influence your decision. . . . You must follow the law as I explain it to you even if you disagree with it." We presume that the jurors understood and followed the trial court's instructions. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

## V. CALCRIM No. 330 Properly Given.

Appellant argues that CALCRIM No. 330 is unconstitutional.

After trial, and pursuant to CALCRIM No. 330, the trial court instructed the jury as follows: "You have heard testimony from a child who is age ten or younger. As with any other witness, you must decide whether the child gave truthful and accurate testimony. In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age [and] level of cognitive development. When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate. While a child and an adult witness may behave differently, that difference does not mean one is more or less believable . . . than the other. You should not discount or distrust the testimony of a witness just because he's a child."

Appellant argues that this instruction improperly precludes consideration of a child witness's demeanor and difficulty in perceiving, understanding, remembering or communicating as indications that their testimony lacks credibility. He recognizes that appellate courts have rejected the same or similar arguments, but argues that those cases were wrongly decided.

The backdrop of the cases to which appellate alludes is section 1127f, which the Legislature enacted in 1986. It provides: "In any criminal trial or proceeding in which a child 10 years of age or younger testifies as a witness, upon the request of a party, the court shall instruct the jury, as follows: [¶] In evaluating the testimony of a child you should consider all of the factors surrounding the child's testimony, including the age of

28

the child and any evidence regarding the child's level of cognitive development. Although, because of age and level of cognitive development, a child may perform differently as a witness from an adult, that does not mean that a child is any more or less credible a witness than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child." (§ 1127f.)

This statute has been implemented first through CALJIC No. 2.20.1, and then through CALCRIM No. 330.

Our Supreme Court explained that based on section 1127f and studies rejecting traditional notions that children are unreliable witnesses, "we must focus on factors other than the youth of the victim/witness" when determining the sufficiency of a child's testimony. (*People v. Jones* (1990) 51 Cal.3d 294, 315 (*Jones*).)

In *People v. Harlan* (1990) 222 Cal.App.3d 439 (*Harlan*), the Fourth District rejected an argument submitted by amici curiae that CALJIC 2.20.1[10] unduly inflated the testimony of children, invaded the province of juries as the determiners of credibility, precluded jurors from discounting the testimony of children due to their age, and precluded jurors from discounting children's testimony based on their cognitive development and immature performance as witnesses. (*Harlan*, *supra*, at p. 455.) The court concluded that the instruction passed constitutional muster. It did not require juries to draw any particular inferences; rather, it advised jurors to consider the testimony of a child witness in light of his or her cognitive development and other factors, and to understand that any portion of the performance of a child witness attributable to his or her

---

[10]    CALJIC No. 2.20.1 states: "In evaluating the testimony of a child [ten years of age or younger] you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. A child, because of age and level of cognitive development, may perform differently than an adult as a witness, but that does not mean that a child is any more or less believable than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child. [¶] 'Cognitive' means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge."

age or cognitive ability does not mean he or she is any more or less credible than an adult.  (*Id*. at p. 456.)

In *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1392–1393 (*Gilbert*), the Sixth District rejected a challenge to CALJIC No. 2.20.1 and followed *Harlan*.  The court explained that the instruction "tells the jury not to make its credibility determinations solely on the basis of the child's 'age and level of cognitive development,' but at the same time invites the jury to take these and all other factors surrounding the child's testimony into account.  The instruction provides sound and rational guidance to the jury in assessing the credibility of a class of witnesses as to whom '"traditional assumptions"' may previously have biased the factfinding process.  Obviously a criminal defendant is entitled to fairness, but just as obviously he or she cannot complain of an instruction the necessary effect of which is to increase the likelihood of a fair result.  There was no denial of due process."  (*Gilbert, supra,* at p. 1393.)

Subsequently, the Fifth District published *People v. McCoy* (2005) 133 Cal.App.4th 974 (*McCoy*).  In that case, the court rejected the argument that CALJIC No. 2.20.1 improperly bolstered a child's testimony in violation of the defendant's state and federal constitutional rights.  (*McCoy, supra,* at p. 978.)  In dicta, the court stated that CALCRIM No. 330 did not infringe on any constitutional rights.  (*McCoy*, at p. 980.)

This brings us to *People v. Fernandez* (2013) 216 Cal.App.4th 540 (*Fernandez*), an opinion from Division One of this district.  It rejected state and federal constitutional challenges to CALCRIM No. 330, stating that the holdings in *Harlan*, *Jones*, *Gilbert* and *McCoy* should be applied, and adding:  "CALCRIM No. 300 simply instructs the jury to take into account a child's ability to perceive, understand, remember and communicate when making a credibility determination.  It does not instruct the jury to subject a child's testimony to a less rigorous credibility determination, nor does it excessively inflate a child witness's credibility."  (*Fernandez* , *supra*, at p. 560.)

We decline to part ways with precedent. These prior opinions are supported by sound reasoning. Moreover, we independently conclude that CALCRIM No. 330 does not prevent a jury from considering a child witness's demeanor and difficulty in perceiving, understanding, remembering or communicating when determining whether the child is a credible witness. Rather, CALCRIM No. 330 instructs a jury to consider a child's testimony, and factors bearing on his or her credibility, in the context of the child's nature and ability.

## VI. No Cumulative Error.

Appellant has not demonstrated that the trial court erred. Consequently, we need not consider his cumulative error argument.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                ASHMANN-GERST


We concur:


_____, P. J.
       BOREN


_____, J.
       HOFFSTADT